UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARK VELICER, et al.,

Plaintiffs,

v.

FALCONHEAD CAPITAL, LLC,

Defendant.

CASE NO. C19-1505JLR

ORDER ON DEFEINDANT'S
MOTION TO DISMISS

## I.    INTRODUCTION

Before the court is Defendant Falconhead Capital, LLC's ("Falconhead") motion
to dismiss Plaintiffs Mark Velicer, Velicer Ice, Inc., Velicer Ice Mariners, LLC, and
Velicer Ice Kent, LLC's (collectively, "Plaintiffs") complaint.  (*See* MTD (Dkt. # 9); *see
also* Compl. (Dkt. # 1-1).)  The court has reviewed the motion, Plaintiffs' opposition to
the motion (*see* Resp. (Dkt. # 17)), other relevant portions of the record, and the

//

//

1  applicable law.  Being fully advised,[1] the court GRANTS in part and DENIES in part

2  Falconhead's motion as more fully described herein.

3  ## II.    BACKGROUND

4  This lawsuit arises out of four franchise agreements and an Area Development

5  Agreement ("ADA") that Mr. Velicer and non-party Rita's Water Ice Franchise Company

6  ("Rita's") executed in September 2015.  (*See* Compl. ¶¶ 4, 8, 16; *see also* Oates Decl.

7  (Dkt. # 10) ¶ 4, Exs. 5-9 (attaching copies of the franchise agreements and the ADA).)

8  Plaintiffs' allege that Mr. Velicer signed the franchise agreements and the ADA after

9  Falconhead—"acting through Rita's"—made fraudulent representations or omissions to

10  Mr. Velicer.  (*See* Compl. ¶¶ 2-3, 16-17, 40.)

11  Plaintiffs own and operate several franchised Rita's Water Ice locations and part

12  of a franchised chain of frozen dessert stores.  (*Id.* ¶ 1.)  Falconhead is a former part-

13  owner of non-party Rita's Holdings, LLC ("Rita's Holdings") with a majority interest

14  therein.  (*Id.* ¶ 8.)  In turn, Rita's Holdings is the corporate parent of Rita's.  (*Id.*)  Rita's

15  is a former franchisor of Rita's Water Ice stores.  (*Id.* ¶¶ 1, 8.)

16  In 2015, Mr. Velicer approached Rita's to inquire about purchasing one or more of

17  Rita's franchise outlets in Washington State.  (*See id.* ¶¶ 1, 16.)  Mr. Velicer was also

18  interested in acquiring an ADA, which would permit him to open multiple locations in a

19  larger territory.  (*See id.* ¶¶ 11, 16.)  Plaintiffs allege that Rita's provided Mr. Velicer

20  //

21
22  ---
[1] Neither party requests oral argument (MTD at title page; Resp. at title page), and the court concludes that oral argument would not assist its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

with copies of its franchise disclosure document ("FDD") for a single franchise and its FDD for an area development agreement. (*Id.* ¶ 17; *see also* Oates Decl. ¶ 2, Exs. 1-2 (attaching copies of the FDD for a single franchise and the FDD for an ADA that Rita's provided to Mr. Velicer on or about April 30, 2015).) An FDD is a document that all franchisors are required to provide to prospective franchisees pursuant to Federal Trade Commission ("FTC") regulations, known as the "Franchise Rule." *See* 16 C.F.R. § 436 (setting forth the Franchise Rule). In addition to the original FDDs, on September 10, 2015, Rita's provided Mr. Velicer two addenda to the FDDs, which disclosed a consumer class action against Rita's alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (*See* Oates Decl. ¶ 3, Exs. 3-4 (attaching copies of the addenda).)

On September 10, 2015, Mr. Velicer executed an ADA and four franchise agreements with Rita's for locations in Washington State. (*See id.* ¶ 4, Exs. 5-9 (attaching copies of the franchise agreements and the ADA).) In conjunction with those agreements, Mr. Velicer signed a release of all claims that he may have had against Rita's and its affiliated entities prior to that date. (*See id.* ¶ 5, Ex. 10 (attaching a copy of the release).)

The franchise agreements and the ADA were originally between Mr. Velicer and Rita's only. (*See id.* ¶ 4, Exs. 5-9.) On March 22, 2016, Mr. Velicer transferred the franchise agreements and the ADA to his corporations, which are also plaintiffs in this lawsuit. (*See* Compl. ¶¶ 4-7; Oates Decl. ¶ 6, Exs. 11-12 (attaching copies of the signed transfer agreements for the ADA and franchise agreements).) On the same day, Mr.

Velicer executed two additional releases "discharg[ing]" Rita's and its "affiliates" "of and from all claims, obligations, actions or causes of action (however denominated), whether in law or in equity, and whether known or unknown, present or contingent, for any injury, damage, or loss whatsoever arising from any acts or occurrences occurring as of or prior to the date of this Agreement . . . ." (*See* Oates Decl. ¶ 7, Ex. 13 at 997, Ex. 14 at 999.)[2]  Plaintiffs also agreed "not to sue any of the Releasees," which included Rita's and its "affiliates," "regarding any of the claims being released under this Agreement." (*Id.*)

Rita's, Rita's Holdings, and Falconhead are no longer involved with the Rita's franchise system.  (*See* Compl. ¶¶ 8, 34; Resp. at 3 (acknowledging that "this implication is accurate").)

On August 15, 2019, more than four years after receiving the FDDs, Plaintiffs filed this lawsuit against Falconhead in Washington state court.  (*See generally* Compl.) Plaintiffs allege that the FDDs omitted the following facts:

    a.  That Falconhead owned a majority interest in Rita's Holdings, the parent company of [Rita's];
    b.  The position and employment history for all individuals required to be listed in Item 2 [of the FDD], including Mr. [Mo] Boutara,[3] and others directly involved in the sales process with management responsibilities;
    c.  That Mr. Velicer would be required to register as a sub-franchisor;
    d.  That the "confidential systems manuals" provided guidance and operational standards for the Rita's Water Ice Franchise and that there was no operations manual specific to a Rita's Area Developer; and

---

[2] The court cites to the page numbers generated by its electronic filing system.

[3] Plaintiffs allege that Mr. Boutara is the salesperson who sold Mr. Velicer the franchises. (Compl. ¶ 24.)  Plaintiffs allege that Mr. Boutara was not a Senior Director of Franchise Development, but rather a contract salesperson who was not employed by Rita's.  (*Id.*)

1    e. The lack of training, systems manual, and promised sales support.

2    (*Id*. ¶ 40 (footnote added).) The complaint is devoid of allegations that Falconhead made

3    any direct representations to Plaintiffs. (*See generally id.*) Nevertheless, based on the

4    foregoing alleged omissions in the FDDs Rita's provided to Mr. Velicer, Plaintiffs assert

5    (1) a claim for violation of Washington's Franchise Investment Protection Act ("FIPA"),

6    RCW 19.100.080, in the sale of the franchises and ADA (Compl. ¶¶ 39-40); (2) a second

7    claim for violation of FIPA, RCW 19.100.170(2), for omitting material facts in the FDDs

8    (Compl. ¶¶ 41-45); (3) a third claim for violation of FIPA, RCW 19.100.170(4), for

9    engaging in a deceptive business practice (Compl. ¶¶ 46-49); (4) a claim for violation of

10   Washington's Consumer Protection Act ("CPA"), RCW 19.86.020 (Compl. ¶¶ 50-51);

11   (5) a claim for common law fraud (*id.* ¶¶ 52-54); and (6) a claim for negligent

12   misrepresentation (*id.* ¶¶ 55-56).

13        On October 28, 2019, Falconhead moved to dismiss Plaintiff's claims arguing that

14   (1) Plaintiffs released the claims (*see* MTD at 6-9); (2) the applicable statutes of

15   limitation bar Plaintiffs' FIPA claims and claims for fraud and negligent

16   misrepresentation (*see id.* at 9-11), (3) Plaintiffs failed to sufficiently plead their fraud-

17   based claims under Federal Rule of Civil Procedure 9(b) (*see* MTD at 11-18); and (4)

18   Plaintiffs failed to plead facts sufficient to state a claim for violation of the CPA and, in

19   any event, violations of FIPA, without more, do not give rise to a cognizable CPA claims

20   (*see id.* at 18-21). Plaintiffs concede that the court should dismiss their FIPA claim

21   brought under RCW 19.100.080 (*see* Resp. at 2 n.1; *see also* Compl. ¶¶ 39-40), and so

22   the court dismisses this claim with prejudice and does not discuss it further. Except for

this claim, Plaintiffs oppose Falconhead's motion.  (*See generally* Resp.)  The court now considers Falconhead's motion.

## III.    ANALYSIS

**A.    Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  The court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 677-78.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not

do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *Lee v. City of L.A.,* 250 F.3d 668, 688 (9th Cir. 2001) (citations omitted). The Ninth Circuit, however, carves out certain exceptions to this rule. For example, a court may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading[.]" *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see also S.M. ex rel. Allen v. W. Contra Cty. Unified Sch. Dist. Fin. Corp.*, No. C 07-5829 CW, 2009 WL 1033826, at *3 (N.D. Cal. Apr. 16, 2009) ("The purpose of this rule is to prevent plaintiffs 'from surviving a Rule 12(b)(6) motion be deliberately omitting references to documents' that are determinative of their claims.") (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.1998), *superseded by statute on other grounds, as noted in Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006)). Because Plaintiffs' complaint necessarily relies on the four franchise agreements and the ADA at issue, the court may consider these documents when deciding this motion. (*See* Oates Decl. ¶ 4, Exs. 5-9.)

Similarly, Plaintiffs' allegations also rely on the FDDs, the 2016 agreements transferring Mr. Velicer's franchises and ADA to the other Plaintiffs, and the 2016 releases, which Mr. Velicer executed as part of the transfer transaction. (*See* Oates Decl. ¶¶ 2, 3, 6-7, Exs. 1-4, 11-14; *see also* Compl. ¶ 4 (noting that Mr. Velicer purchased the

franchises "acting through his corporate entities"), ¶ 17 (alleging that Rita's provided Mr. Velicer with FDDs for a franchise and an ADA); Resp. at 5 (conceding that "Falconhead is correct that a court may consider undisputedly authentic documents in a 12(b)(6) challenge.").) Accordingly, the court also considers these documents when evaluating Falconhead's motion to dismiss. *See S.M. ex rel. Allen*, 2009 WL 1033826, at *3 (relying on releases not attached to the complaint when the releases were arguably determinative of the plaintiffs' claims).

Finally, although expiration of the statute of limitations is an affirmative defense, claims may be dismissed where the merits of such an affirmative defense is apparent from the face of the pleadings and matters on which the court may take judicial notice. *Seven Arms Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013); *see also* Fed. R. Evid. 201.

**B.    2016 Releases**

Falconhead argues that the releases that Mr. Velicer executed in 2016 bar Plaintiffs' claims.[4] (MTD at 6-9.) Under Washington law, courts construe the validity and enforceability of a release according to the substantive law of contracts. *See, e.g.*, *Barton v. State, Dep't of Transp.*, 308 P.3d 597, 606 (Wash. 2013); *Del Rosario v. Del Rosario*, 97 P.3d 11, 14 (Wash. 2004); *Nationwide Mut. Fire Ins. Co. v. Watson*, 840 P.2d 851, 856 (Wash. 1992). "A release is a contract in which one party agrees to abandon or relinquish a claim, obligation or cause of action against another party."

---

[4] Plaintiffs acknowledge that the court may consider the 2016 releases in the context of this motion to dismiss. (*See* Resp. at 5.)

*Boyce v. West*, 862 P.2d 592, 595 (Wash. Ct. App. 1993). Washington courts generally do not "vacate properly executed releases because [the state] favors finality in private settlements." *Del Rosario*, 97 P.3d at 14; *see also Bennett v. Shinoda Floral, Inc.*, 739 P.2d 648, 653 (Wash. 1987); *Bakamus v. Albert*, 95 P.2d 767, 770-71 (Wash. 1939); *Metro. Life Ins. Co. v. Ritz*, 422 P.2d 780, 783 (Wash. Ct. App. 1967) ("We have made clear that amicable settlements and releases of unliquidated claims are favored as a desirable method of avoiding unnecessary and expensive litigation."). "Under Washington law, a release is valid unless there was fraud, misrepresentation, or overreaching in its procurement." *Burgess v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir. 1984) (citing *Metropolitan Life Ins. Co. v. Ritz*, 422 P.2d 780, 783 (Wash. 1967)).

First, Plaintiffs argue that "Falconhead ignores that the releases do not identify Falconhead." (Resp. at 4.) Yet, the 2016 releases expressly define a "Releasee" to include not only Rita's but also its "affiliates." (*See* Oates Decl. ¶ 7, Ex. 13 at 997, Ex. 14 at 999.) Thus, although Falconhead is not expressly named in the release, the release applies to Falconhead if it is an "affiliate" of Rita's. Undefined contract terms are given their "plain, ordinary, and popular meaning." *See Queen City Farms. Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 882 P.2d 703, 712 (Wash. 1994), *as amended* (Sept. 29, 1994), *as clarified on denial of reconsideration* (Mar. 22, 1995). "To determine the ordinary meaning of an undefined term, [Washington] courts look to standard English language dictionaries." *McLaughlin v. Travelers Commercial Ins. Co.*, 446 P.3d 654, 656 (Wash. Ct. App. 2019), *review granted*, 455 P.3d 139 (Wash. 2020) (citing *Boeing Co. v. Aetna Cas. & Sur. Co.*, 784 P.2d 507, 511 (Wash. 1990)); *see also Landover Corp. v. Bellevue*

*Master, LLC*, 252 F. App'x 800, 802 (9th Cir. 2007) (relying on Black's Law Dictionary for the definition of "affiliate" in a contract). Black's Law Dictionary defines "affiliate" as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." AFFILIATE, Black's Law Dictionary (11th ed. 2019). Plaintiffs expressly allege that Falconhead is a "parent" corporation of Rita's; indeed, this allegation underlies one of their fraud claims because they contend that the FDDs should have disclosed Falconhead's status as "parent" of Rita's under the Franchise Rule. (*See* Compl. ¶¶ 1, 8, 31, 40.a, 56.) Based on these allegations, Plaintiffs cannot reasonably dispute that Falconhead is a parent or sibling corporation of Rita's. Thus, the court concludes that Falconhead falls within the 2016 releases' definition of "Releasee."

Plaintiffs also argue that the 2016 releases are void because they were induced by fraud or misrepresentation. (Resp. at 5-6.) However, as Falconhead points out, Plaintiffs do not identify in the complaint any fraudulent conduct that was meant to induce the execution of the 2016 releases. (*See* Reply (Dkt. # 19) at 1.) At most, Plaintiffs allege fraudulent conduct in 2015 related to the ADA and the four franchise agreements at issue here. (*See generally* Compl.) Fraudulent conduct that allegedly occurred prior to the execution of the 2016 releases does not void the releases. *See Chamberlain Grp., Inc. v. Nassimi*, C09-543BHS, 2010 WL 4286192, at *7 (W.D. Wash. Oct. 25, 2010) (holding that a release, signed as a condition of a purchase agreement, releases a claim for fraud stemming from conduct that occurred prior to the execution of the release); *Goel v. Jain*, 259 F. Supp. 2d 1128, 1136 (W.D. Wash. 2003) (same).

Plaintiffs' authority is not to the contrary. (*See* Resp. at 5-6.) In *Burgess*, 727 F.3d at 832, the court declined to impose summary judgment in favor of the defendants on the plaintiff's state law claims because the releases at issue were part of the same transaction in which the defendants allegedly made misrepresentations and, therefore, a jury question existed as to whether the releases were fraudulently procured. *See id.* In *Urban v. Mid-Century Insurance*, 905 P.2d 404, 406 (Wash. 1992), trial court granted an insurer's motion for summary judgment based on the plaintiff's execution of a release of her claim. *Id.* Because the defendant insurer did not provide the statutorily required information in connection with the plaintiff's insurance claim before obtaining her release of that same claim, the Supreme Court reversed and remanded for determination of whether the release was void for not having been knowingly and fairly made. *Id.* at 407. As noted above, unlike these cases, Plaintiffs allegations of fraud all relate to the four franchise agreements and the ADA executed in 2015, and not the subsequent and separate transfer transactions in 2016.[5]

The language in the 2016 releases is broad and includes "all claims, obligations, actions or causes of action (however denominated), whether in law or equity, and

//

---

[5] Further, in *Urban*, the defendant insurer owed an "enhanced fiduciary obligation" to its insured "that rises to a level higher than that of mere honesty and lawfulness of purpose." *See Van Noy v. State Farm Mut. Auto. Ins. Co.*, 16 P.3d 574, 579 & n.1 (Wash. 2001). Although "something less than a true fiduciary relationship exists" in the insurance context, *see Safeco Ins. Co. of Am. v. Butler*, 823 P.2d 499, 503 (Wash. 1992), the insurer nevertheless has an elevated duty of good faith towards its insured which requires the insurer to "deal fairly" with and give "equal consideration" to its insured, *see Van Noy*, 16 P.3d at 579. However, despite certain statutory protections, there is no such fiduciary obligation in the context of a franchise relationship. *Corp v. Atl. Richfield Co.*, 860 P.2d 1015, 1022 (Wash. 1993) ("A franchise relationship is a business rather than a fiduciary relationship.").

whether known or unknown, present or contingent, for any injury, damage, or loss whatsoever arising from any acts or occurrences occurring as of or prior to the date of this Agreement relating to the Franchise agreement, the Franchise Business, and/or any other agreement between any of the Releasees and any of the Releasors." (*See* Oates Decl. ¶ 7, Ex. 13 at 997, Ex. 17 at 999.) The court concludes that this language encompasses all of Plaintiffs' claims except for those based on FIPA for the reasons stated below.

Plaintiffs argue that FIPA prohibits the dismissal of their FIPA claims brought under RCW 19.100.170 based on the 2016 releases. (*See* Resp. at 6-7; *see also* Compl. ¶¶ 41-49 (reciting Counts B & C).) The court agrees. Under FIPA generally, "[a]ny agreement, condition, stipulation or provision . . . purporting to bind any person to waive compliance with any provision of this chapter or any rule or order hereunder is void." RCW 19.100.200(2). Falconhead, however, argues that the 2016 releases fall within an exception for "[a] release . . . executed . . . pursuant to a negotiated settlement in connection with a bona fide dispute between a franchisee and a franchisor, arising after their franchise agreement has taken effect, in which the person giving the release or waiver is represented by independent legal counsel." *Id.* Even if the court agreed with Falconhead's argument that the 2016 releases resolved "a bona fide dispute" between the parties, there is no allegation or other indication before the court verifying that Plaintiffs were "represented by independent legal counsel" in conjunction with and at the time they executed the 2016 releases. Although Falconhead is correct that the 2016 releases recite that Plaintiffs "had ample opportunity to review the [releases] with an attorney" (Oates

Decl. ¶ 7, Ex 13 at 997, Ex. 14 at 999), the statute does not require the mere "opportunity" to obtain the assistance of a lawyer, but rather actual representation by independent legal counsel. *See* RCW 19.100.200(2). Accordingly, the court denies Falconhead's motion to dismiss Plaintiffs' FIPA claims brought under RCW 19.100.170 based on the 2016 releases. (*See* Compl. ¶¶ 41-49 (reciting Counts A & B).)

In summary, the court dismisses all of Plaintiffs' non-FIPA claims (*see* Compl. ¶¶ 50-56) based on the 2016 releases. However, because the court cannot conclude on the basis of the record before it that Plaintiffs could not re-plead these claims to allege circumstances that would require a duty of disclosure,[6] the court grants Plaintiffs leave to amend these claims. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (stating that where claims are dismissed under Rule 12(b)(6), the court "should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts."). The court denies Falconhead's motion to dismiss Plaintiffs' FIPA claims brought under RCW 19.100.170(2) and RCW 19.100.170(4) based on the 2016 releases.

## C.   Statutes of Limitation

Falconhead argues that the applicable statutes of limitation bar Plaintiffs' claims. (MTD at 8-12, 20.) As noted above, Plaintiffs concede that their FIPA claim based on RCW 19.100.080 (*see* Compl. ¶¶ 39-400 is time-barred (*see* Resp. at 2 n.1), and

//

---

[6] *See Goel*, 259 F. Supp. 2d at 1137 (discussing the factors used to determine whether a party has a duty to disclose in the context of the execution of a release) (citing *Paracour Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1157 (9th Cir. 1996)).

accordingly, the court dismisses this claim with prejudice.  Plaintiffs assert that their remaining claims are timely.  (*See id.* at 7-9.)

The parties agree that a three-year limitation period applies to Plaintiffs' remaining FIPA claims, as well as to Plaintiffs' fraud and negligence misrepresentation claims, and that a four-year period applies to Plaintiffs' CPA claim.  (*See* MTD at 10-11 (citing RCW 4.16.080 & *McGowan v. Pillsbury Co.*, 723 F. Supp. 530, 537 (W.D. Wash. 1989)); *id.* at 20 (citing RCW 19.86.120); Resp. at 7 ("The parties agree that there is a three-year statute of limitations for common law fraud, negligent misrepresentation and FIPA fraud and a four-year statute of limitations for the violations of the CPA.").)  The court agrees with the parties and applies these limitation periods respectively.

Falconhead argues that the foregoing limitation periods of three and four years expired because underlying Plaintiffs' claims is the allegation that Plaintiffs were deceived by purportedly inaccurate or incomplete April 2015 FDDs, but Plaintiffs did not file their complaint until August 15, 2019—more than four years later.  (*See* MTD at 11, 20; *see also* Compl.)  Plaintiffs respond that the discovery rule applies to their claims and that the applicable statute of limitations does not begin to run until Mr. Velicer "had knowledge of the omitted disclosures."  (Resp. at 8-9 (citing *Deegan v. Windermere Real Estate/Center-Isle, Inc.*, 391 P.3d 582 (Wash. 2017))); *see also Schreiner Farms, Inc. v. Am. Tower, Inc.*, 293 P.3d 407, 411 (Wash. Ct. App. 2013) ("'[U]nder the discovery rule, a cause of action does not accrue—and as a result the statute of limitations does not begin to run—until the plaintiff knows, or has reason to know, the factual basis for the cause of action.'") (quoting *Bowles v. Wash. Dep't of Ret. Sys.*, 847 P.2d 440, 454 (Wash. 1993)).

Although the discovery rule or some type of equitable tolling may apply to the applicable statutes of limitation, the allegations in Plaintiffs' complaint leave "unresolved when [Plaintiffs], through due diligence, knew or should have known the basis" for their claims. *See Deegan*, 391 P.3d at 591. Plaintiffs may not merely speculate in their briefing or otherwise concerning when the applicable statutes of limitation are triggered or tolled. *See Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006) ("[F]ederal courts have repeatedly held that plaintiffs seeking to toll the statute of limitations on various grounds must have included the allegation in their pleadings . . . ."). They must allege facts in their complaint that render their claims "plausibly" timely. *See Twombly*, 550 U.S. at 570. Plaintiffs fail to do so; indeed, their complaint is devoid of allegations concerning when they discovered the basis of their claims. (*See generally* Compl.)

Because Plaintiffs have not alleged facts that "nudge[] their claims across the line from conceivable[y] to plausibl[y]" timely, *see Twombly*, 550 U.S. at 570, the court grants Falconhead's motion to dismiss Plaintiffs' claims on statute of limitations grounds. However, except with respect to Plaintiff's FIPA claim based on RCW 19.100.080 (*see* Compl. ¶¶ 39-40), which the court dismisses with prejudice, the court grants Plaintiffs leave to amend their complaint to allege facts, if possible, that would render their claims plausibly timely under the applicable limitations period. *See Lopez*, 203 F.3d at 1127.

**D.     Failure to Sufficiently Plead Fraud-Based Claims under Rule 9(b)**

Falconhead argues that Plaintiffs must plead their claims based on FIPA's anti-fraud provisions under RCW 19.100.170(2) and (4), as well as their claims for fraud

and negligent misrepresentation, pursuant to the standards set forth in Federal Rule of

Civil Procedure 9(b), and that Plaintiffs have failed to meet this standard. (*See* MTD at

11-18.) Rule 9(b)'s particularity requirement applies to all state law causes of action that

"sound in fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).

If a party alleges a unified course of fraudulent conduct and relies entirely on that course

of conduct as the basis of a claim, the pleading as a whole must satisfy Rule 9(b)'s

heightened standard. *Id.* Here, all of Plaintiffs' claims, including their statutory claims

under FIPA and their fraud and negligent misrepresentation claims, rely on the same set

of facts, which include allegations of fraudulent omissions. (*See generally* Compl.)

Thus, all of Plaintiffs' claims, including their statutory claims and their claim for

negligent misrepresentation, are subject to the heightened pleading standard of Rule 9(b).

*See Wessa v. Watermark Paddlesports, Inc.*, No. C06-5156 FDB, 2006 WL 1418906, at

*2 (W.D. Wash. May 22, 2006) (concluding that the plaintiff's negligent

misrepresentation claim was subject to the heightened pleading standard of Rule 9(b)

because the complaint alleged that the defendant engaged in fraudulent conduct and

relied entirely on that course of conduct as the basis for the negligent misrepresentation

claim); *see also* Fed. R. Civ. P. 9(b).

       Under Rule 9(b), a "[p]laintiff must allege the 'who, what, when, where, and how'

of the purported fraud." *Gaylean v. OneWest Bank FSB*, No. C10–827 MJP, 2010 WL

5138396, at *3 (W.D. Wash. Dec. 9, 2010) (quoting *Vess*, 317 F.3d at 1106). When, like

here, "a claim rests on allegations of fraudulent omission, . . . the Rule 9(b) standard is

somewhat relaxed because "a plaintiff cannot plead either the specific time of omission

or the place, as [the plaintiff] is not alleging an act, but a failure to act." *Asghari v. Volkswagon Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013). "Nonetheless, a plaintiff pleading fraudulent omission or concealment must still plead the claim with particularity." *Id.*; *Waldrup v. Countrywide Financial Corp.*, No. 2:13-cv-08833-CAS(CWx), 2014 WL 3715131, *5 (C.D. Cal. July 23, 2014) (holding that where a fraudulent omission is at issue, the requirements of Rule 9(b) are relaxed, but not eliminated). All of Plaintiffs' claims in this action sound in fraud. (*See generally* Compl.) Accordingly, Plaintiffs must plead the elements of those claims with particularity. *See* Fed. R. Civ. P. 9(b).

To establish a claim under the anti-fraud provisions of FIPA contained in RCW 19.100.170 (*see* Compl. ¶¶ 41-49), Plaintiffs must plead and prove seven of the nine elements of common law fraud, *see BP W. Coast Prod., LLC v. Shalabi*, No. C11-1341MJP, 2012 WL 2277843, at *4 (W.D. Wash. June 14, 2012). "Unlike common law fraud, fraud under . . . FIPA . . . ha[s] been interpreted as not requiring the 'scienter' elements of common law fraud: (4) knowledge of falsity by the speaker; and (5) intent that the statement should be acted upon by the plaintiff." *Id.* (citing *Kirkham v. Smith*, 23 P.3d 10 (Wash. Ct. App. 2001)). Thus, the elements of Plaintiffs' FIPA claims include: (1) a representation or omission of an existing fact; (2) materiality; (3) falsity; (4) Plaintiffs' ignorance of its falsity; (5) Plaintiffs' reliance on the truth of the representation; (6) Plaintiffs' right to rely upon it; and (7) the damages Plaintiffs'

//

//

suffered.[7]  *See id.*  In addition, unlike claims for fraud under FIPA, common law fraud

requires Plaintiffs to prove two additional elements:  (1) that that the person who made

the representation or omission knew that it was false; and (2) that the person intended that

Plaintiffs should act on it.  *Adams v. King Cty.*, 192 P.2d 891, 902 (Wash. 2008).

Based on the foregoing principles, the court concludes that Plaintiffs' complaint

fails to adequately allege a basis for Falconhead's liability under FIPA, for common law

fraud, or for negligent misrepresentation.  The complaint alleges in a conclusory fashion

that Falconhead "provid[ed] [Mr. Velicer] inaccurate and incomplete information"

regarding his purchase of the four franchises and the ADA, that Falconhead "omitted key

details about the franchise business model and its ownership structure and about the

training and support" provided (Compl ¶¶ 1-2; *see also id.* ¶ 42), and that Falconhead had

a duty to disclose the omitted information (*id.* ¶¶ 42, 53).  Yet, each of the

misrepresentations or omissions that Plaintiffs allege in the complaint stems solely from

the FDDs (*see id.* ¶¶ 20, 23, 25, 29, 33, 40), which Rita's, not Falconhead, provided to

Mr. Velicer (*see id.* ¶ 17 ("[Rita's] provided Mr. Velicer a copy of the FDD for a Rita's

Water Ice Franchise and a FDD for the ADA.  Neither FDD disclosed all of the required

information and both omitted material facts.").  Falconhead asserts that it "is not

responsible for any of these purported acts or omissions" and that Plaintiffs allege no

---

[7] Relying on *Morris v. International Yoghurt Co.*, 729 P.3d 33 (Wash. 1986), Plaintiffs contend that the foregoing seven elements do not apply in a misrepresentation by omission case under FIPA.  (Resp. at 19.)  *Morris*, however, does not address this issue.  Instead, *Morris* merely concludes that in a fraud by omissions case, there is a "rebuttable presumption of reliance" that a defendant may rebut by proving that the plaintiff's decision would have been unaffected even if the omitted fact had been disclosed."  729 P.3d at 41-42.

facts to establish that it owed a duty to Plaintiffs.  (MTD at 13-14.)  Thus, Falconhead

argues that Plaintiffs failed to adequately allege a basis for Falconhead's liability.  (*Id.* at

12-14.)

Plaintiffs acknowledge that in general a parent corporation is not liable for the acts

of its subsidiaries.  (Resp. at 9 (citing *United States v. Bestfoods*, 524 U.S. 51, 61

(1998)).)  Nevertheless, Plaintiffs argue that Falconhead (1) is liable because it

constitutes a "person" under RCW 19.100.010(13) and "effectively controls" Rita's,  (2)

is liable under a theory of piercing the corporate veil, or (3) otherwise owes a duty to

disclose to Plaintiffs based on its special knowledge.  (Resp. at 9-11, 15-16.)

First, FIPA defines a "person" to include, in relevant part, "a . . . corporation . . .

or other entity and in the case of an entity, it shall include any other entity which has a

majority interest in such an entity or effectively controls such other entity . . . ."  RCW

19.100.010(13).  Plaintiffs suggest that where FIPA liability exists, it runs to any entity

that falls within FIPA's definition of a "person."  (*See* Resp. at 10.)  As one commentator

has noted:  "If this is what the legislature intended, it is at best a convoluted manner of

imposing control-person liability."  Douglas C. Berry, David M. Byers, & Daniel J.

Oates, *State Regulation of Franchising:  The Washington Experience Revisited*, 32

Seattle U. L. Rev. 811, 857 (Summer 2009).  "Indeed, it would seem unlikely that . . . the

legislature intended to impose strict liability upon a control person who has no

knowledge or involvement with any wrongdoing under FIPA."  *Id.* at 858.  Even if the

statute could be so construed, Plaintiffs fail to sufficiently allege Falconhead's liability

under this provision.  Plaintiffs do not allege that Falconhead has a majority interest in

the franchisor, Rita's, as required under RCW 19.100.010(13); instead Plaintiffs allege that Falconhead has "held, at relevant times[,] a majority interest in Rita's Holdings," which Plaintiffs, in turn, allege was the "corporate parent of Rita's." (Compl. ¶ 8.) This corporate relationship is one-step too far removed to fall within the plain language of RCW 19.100.010(13). Further, Plaintiffs fail to plausibly allege facts supporting the notion that Falconhead "effectively control[led]" Rita's. *See* RCW 19.100.010(13); (*see generally* Compl.).

Further, Plaintiffs cannot rely on RCW 19.100.010(13) for their non-FIPA claims, such as fraud and negligent misrepresentation. For these claims, Plaintiffs assert that the court should pierce Rita's corporate veil. (Resp. at 9-10.) Under Washington law, "[t]he corporate entity is disregarded and liability assessed against shareholders in the corporation when the corporation has been intentionally used to violate or evade a duty owed to another." *Morgan v. Burks*, 611 P.2d 751, 755 (Wash. 1980) (citation omitted). In general, to pierce the corporate veil, the plaintiff must show that the corporate form was used to violate or evade a duty and that the corporate veil must be disregarded in order to prevent loss to an innocent party. *Chadwick Farms Owners Ass'n v. FHC LLC*, 166 Wash. 2d 178, 200, 207 P.3d 1251, 1262 (Wash. 2009), *as corrected* (Sept. 14, 2009). Plaintiffs must plausibly plead facts to support piercing the corporate veil. *See Gremp v. Ramsey*, No. C08-558RSM, 2009 WL 112674, at *8 (W.D. Wash. Jan. 14, 2009) (concluding under the facts of that case that the plaintiff adequately pleaded a claim for piercing the corporate veil). Here, Plaintiffs must plead facts sufficient to

//

pierce two layers of corporate veil—both Rita's and Rita's Holdings—before liability

could be plausibly imposed on Falconhead.  (*See* Compl. ¶ 8 (alleging that

"Falconhead held . . . a majority interest in Rita's Holdings . . . , which was the corporate

parent of Rita's . . . .").)  Plaintiffs have failed to adequately allege such facts.[8]

Finally, Plaintiffs assert that they can establish the elements of fraud by showing

that Falconhead owed them a duty to disclose.  (Resp. at 13 (citing *Pearle Vision, Inc. v.

Shames*, No. 94 C 393, 1994 WL 285068 (D. Md. Sept. 14, 1993)).)  To the extent that

Washington law allows a claim for fraud to proceed on this basis, *see, e.g.*, *Goel*, 259 F.

Supp. 2d at 1137 (discussing the factors used to determine whether a party has a duty to

disclose in the context of the execution of a release), Plaintiffs bear the burden to allege

facts that would make the existence of such a duty plausible, *see, e.g.*, *Carideo v. Dell*,

---

[8] Plaintiffs assert that Rule 9(b)'s heightened pleading standard is relaxed in circumstances where a corporate defendant is in control of the information at issue. (*See* Resp. at 11.) Where a fact—such as whether the corporate form was used to evade a duty—is peculiarly within the defendant's possession, it can be alleged on information and belief so long as facts supporting the belief are alleged. *See, e.g.*, *Apodaca v. Whirlpool Corp.*, No. SACV 13-00725 JVS (ANx), 2013 WL 6477821, *4 (C.D. Cal. Nov. 8, 2013) ("[T]hough allegations based on information and belief are usually insufficient [under Rule 9(b)], in circumstances of corporate fraud, this rule may be relaxed as to matters within the opposing party's knowledge"); *United States ex rel. Mason v. State Farm Mut. Auto. Ins. Co.*, No. CV07-297-S-EJL, 2008 WL 2857372, *13 (D. Idaho July 23, 2008) ("[A] lenient application of Rule 9(b) is allowed 'in a limited class of corporate fraud cases where the evidence of fraud is within a defendant's exclusive possession.' In such cases, a complaint based on information and belief is sufficient if it includes a statement of facts upon which the belief is based") (quoting *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001)). "But even under a relaxed standard, [the plaintiff] must provide enough detail 'to give [the defendant] notice of the particular misconduct which is alleged to constitute the fraud charged so that [the defendant] can defend against the charge and not just deny that [it has] done anything wrong.'" *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010) (quoting *U.S. ex rel. Lee*, 245 F.3d at 1051-52). Thus, Plaintiffs' allegation of knowledge on information and belief concerning facts that support piercing the corporate veils of Rita's and Rita's Holdings is sufficient only if Plaintiffs allege facts supporting that belief. The allegations in the complaint presently are inadequate.

706 F. Supp. 2d 1122, 1133 (W.D. Wash. 2010) ("Plaintiffs have adequately pleaded that [the defendant] had a duty to disclose.").  Yet, Plaintiffs concede that Falconhead is not a fiduciary.  (Resp. at 16 ("Falconhead correctly states that franchisors do not owe a fiduciary duty to franchisees . . . .").)  Instead, Plaintiffs argue that a duty exists because Falconhead "has special knowledge of material facts to which the other party does not have access."  (*Id.* at 15 (citing *Haberman v. WPPSS*, 74 P.2d 1032, 1069-70 (Wash. 1988)).)  But in the absence of a fiduciary relationship, such a duty arises in a business transaction only where matters known to the non-disclosing party are necessary to prevent a partial or ambiguous statement of facts from being misleading, or where the relationship between the parties or custom of prior trade is such that the disclosure would be reasonably expected.  *See Haberman*, 74 P.2d at 1169-70 (citing Restatement (Second) of Torts § 551)).  Here, Falconhead was not a party to any of the transactions at issue; nor do Plaintiffs allege that Falconhead itself made any misrepresentation or omission related to the transactions at issue.  (*See generally* Compl.; *see also* Oates Decl. ¶ 4, Exs. 5-9.)  As such, Falconhead owes no duty to Plaintiffs under the Restatement rule cited in *Haberman* and upon which Plaintiffs rely.  Thus, the only way that this rule assists Plaintiffs in properly alleging their negligent misrepresentation and fraud claims is if they allege facts making plausible the disregard of the corporate forms of both Rita's and Rita's Holdings.

    In sum, the court grants Falconhead's motion to dismiss on the grounds that Plaintiffs have failed to adequately plead a basis for its liability under FIPA or for fraud or negligent misrepresentation based solely on acts or omissions committed by Rita's.

However, the court grants Plaintiffs leave to amend their complaint to allege facts, if possible, that would render plausible the piercing of the corporate veils of Rita's and Rita's Holdings or the notion that Falconhead "effectively control[led]" Rita's.  *See Lopez*, 203 F.3d at 1127.[9]

**E.  CPA**

Plaintiffs' complaint fails to state a CPA claim.  Plaintiffs do not contest Falconhead's assertion that Plaintiffs base their CPA claim on Falconhead's alleged violations of the provisions of FIPA found in RCW 19.100.080 and RCW 19.100.170. (*See* Resp. at 21-22; *see also* MTD at 19 ("[P]resumably Plaintiffs will argue that they are asserting [their CPA] claim based on Falconhead's alleged violations of RCW 19.100.080 and RCW 19.100.170 . . . .").)  Yet, violations of these provisions of FIPA, without more, do not give rise to a cognizable CPA claim.  FIPA expressly identifies the CPA as a remedy only for violations of RCW 19.100.180—the post-sale relationship section of FIPA; FIPA does not identify the CPA as a remedy for violations of RCW 19.100.170—the anti-fraud section, or for violations of RCW 19.100.080—the technical violation section.  *See* RCW 19.100.190.  The statute could not be more explicit.  In subsection one of RCW 19.100.190, FIPA denominates claims under RCW 19.100.180 as actionable under the CPA; and in subsection two of RCW 19.100.190, FIPA denominates other FIPA claims as separately actionable under FIPA.  *Compare* RCW 19.100.190(1)

---

[9] Falconhead argues that Plaintiffs failed to adequately allege various other elements of Plaintiffs' FIPA, fraud, and negligent misrepresentation claims.  (*See* MTD at 14-18.)  The court denies Falconhead's motion to dismiss on these additional grounds, but notes that some of these issues may be appropriate to raise in a subsequent motion for summary judgment.

(stating that "the commission of any unfair or deceptive acts or practices or unfair methods of competition prohibited by RCW 19.100.180 . . . shall constitute an unfair or deceptive act or practice under the provisions of chapter 19.86 RCW"), *with* RCW 19.100.190(2) (stating that "[a]ny person who sells or offers to sell a franchise in violation of this chapter shall be liable to the franchisee or subfranchisor who may sue at law or in equity for damages caused thereby for rescission or other relief as the court may deem appropriate"). Indeed, subsection three sets forth the specific parameters for a suit under subsection two. *See* RCW 19.100.190(3) (providing that a suit brought under subsection two may be for actual damages but that the court has discretion to award treble damages, and further providing that the court has discretion to award costs and a reasonable attorney's fee to the prevailing party).

The legislature's decision to provide for a CPA remedy for violation of RCW 19.100.180 but not for other sections of FIPA demonstrates that the legislature did not intend for violations of those other provisions to be actionable under the CPA. *See Kucana v. Holder*, 558 U.S. 233, 249 (2010) ("[W]here [the legislature] includes particular language in one section of a statue but omits it in another section of the same Act, it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion."); *see also In re detention of D.F.F.*, 183 P.3d 302, 306 (Wash. Ct. App. 2008) ("When a statute or rule provides for specifically enumerated exceptions, we presume that the absence of other exceptions is intentional."); *see also Fleetwood v. Stanley Steemer In*t'l, 446 F. App'x 868, 869 (9th Cir. 2011) (holding that "[a] violation of FIPA's good faith requirement in [RCW] 19.100.180(1) is not an unfair

or deceptive practice under the [CPA]" because RCW 19.100.190(1) provides that "unfair or deceptive acts" that are prohibited by RCW 19.100.180" are violations of the CPA and RCW 19.100.180(2) specifically refers to "unfair or deceptive act[s]" but RCW 19.100.180(1) does not). Thus, the court concludes that it must grant Falconhead's motion and dismiss Plaintiffs' CPA claim.[10]

Although Plaintiffs state perfunctorily that "[s]hould the court require additional facts, [they] request[] leave to amend the [c]omplaint" (Resp. at 22 n.6), Plaintiffs provide the court with no set of potential facts that could circumvent the forgoing legal analysis concerning the non-viability of their CPA claim. Accordingly, in this instance, the court declines to grant Plaintiffs leave to amend and instead dismisses their CPA claim with prejudice.

## IV. CONCLUSION

Based on the foregoing analysis, the court GRANTS in part and DENIES in part Falconhead's motion to dismiss (Dkt. #9) as follows:

//

---

[10] Plaintiffs assert that Falconhead's argument "contradicts the express language . . . of RCW 19.100.910[,] which states that the provisions of FIPA "shall be *cumulative* and *non-exclusive* and shall not affect any other remedy available at law." (Resp. at 21 (quoting RCW 19.100.910 (italics added)).) Plaintiffs further argue that the legislature amended the CPA in 2009 to explicitly state that a party may bring a private action where it can establish that an act violates a statute that, *inter alia*, incorporates the CPA or that contains a "specific legislative declaration of public interest impact." (*See id.* at 21-22 (citing RCW 19.86.093(2)).) But FIPA contains no such specific provision. *Compare* RCW 19.142.100 ("A violation of this chapter constitutes an unfair or deceptive act or practice and *is a per se violation of the consumer protection act*." (italics added)), *with* RCW 19.100.180(2) ("[I]t shall be an unfair or deceptive act or practice or an unfair method of competition . . . [for a person to violate any of the subsections of RCW 19.100.180(2)].")). The legislature did not include a "per se" declaration in FIPA, and to the extent FIPA can be construed to have one at all, it is limited to specific sections of the statute that are not at issue n this case.

- The court GRANTS Falconhead's motion to dismiss Plaintiffs' claims for violation of FIPA based on RCW 19.100.080 (*see* Compl. ¶¶ 39-40) and for violation of the CPA (*see* Compl. ¶¶ 50-51) and DISMISSES these claims WITH PREJUDICE;

- The court GRANTS Falconhead's motion to dismiss Plaintiffs' remaining non-FIPA claims (*see* Compl. ¶¶ 52-56) based on the 2016 releases, but with leave to amend those claims;

- The court GRANTS Falconhead's motion to dismiss Plaintiffs' remaining claims based on the applicable statutes of limitation, but with leave to amend to allege facts that would plausibly render Falconhead's remaining claims timely;

- The court GRANTS Falconhead's motion to dismiss on grounds that Plaintiffs failed to adequately plead a basis for Falconhead's liability under FIPA, as well as for fraud and negligent misrepresentation, but with leave to amend; and

- The court DENIES Falconhead's motion in all other respects.

Plaintiffs shall file their amended complaint, if any, alleging facts that resolve the issues stated herein, no later than twenty (20) days from the filing date of this order.

//

//

//

//

//

//

1  Failure to timely file an amended complaint may result in the dismissal of Plaintiffs'

2  complaint.

3      Dated this 11th day of March, 2020.

4

5  _____

6  JAMES L. ROBART
   United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22